FILED
United States Court of Appeals
Tenth Circuit

February 7, 2011

Elisabeth A. Shumaker
Clerk of Court

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

     Plaintiff-Appellee,

v.

TOBY BEGAY,

     Defendant-Appellant.

No. 10-2068

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO
(D.C. No. 1:96-CR-00064-JEC-1)**

---

Joseph W. Gandert, Assistant Federal Public Defender, Albuquerque, New Mexico, for Defendant-Appellant.

Shana B. Pennington, Assistant United States Attorney, (Kenneth J. Gonzales, United States Attorney, with her on the brief), Albuquerque, New Mexico, for Plaintiff-Appellee.

---

Before **BRISCOE,** Chief Judge, **MURPHY** and **MATHESON**, Circuit Judges.

---

**BRISCOE**, Chief Judge.

---

     Defendant/Appellant Toby Begay, a convicted sex offender, appeals the

district court's modification of the conditions of his supervised release to include

clinical polygraph testing. Title 18 U.S.C. § 3583(e)(2) sets forth the conditions and procedures under which a district court may modify conditions of supervised release. Begay argues that a district court does not have authority to modify conditions of supervised release pursuant to 18 U.S.C. § 3583(e)(2) unless the government can justify the modification by showing that circumstances have changed since the original sentencing. He also argues that clinical polygraph testing is not a valid special condition of supervised release in his case. Exercising jurisdiction under 28 U.S.C. § 1291, we affirm.

I

Begay sexually abused a minor child and subsequently, in 1995, he threatened to kill his family and himself after the abuse was reported. These incidents took place within the Navajo Nation. Begay pled guilty to one count of aggravated sexual abuse of a child in violation of 18 U.S.C. §§ 2241(c) and 2246(2)(C); three counts of assault with a dangerous weapon with intent to do bodily harm in violation of 18 U.S.C. § 113(a)(3); one count of using a firearm in furtherance of a crime of violence in violation of 18 U.S.C. § 924(c); and one count of being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). Supp. ROA at 1, 8.

Begay was sentenced on September 27, 1996 to 196 months' imprisonment and sixty months' supervised release. Id. At the time of sentencing, the district court imposed the standard conditions of supervised release, as well as three

2

special conditions: Begay was ordered to participate in a substance abuse treatment program, prohibited from possessing or consuming alcohol, and ordered "to participate in a sex offender treatment program as directed and approved by the U.S. Probation Office." Id. at 4.

At the end of his term of imprisonment, Begay was released to a halfway house. Begay had not violated any of the conditions of his supervised release, and he was complying with the rules of the halfway house. Nonetheless, in anticipation of Begay's return to the Navajo Nation in March 2010, the United States Probation Office (USPO) filed a motion to add more special conditions of supervised release, namely: a waiver of confidentiality regarding mental health treatment; submission to sex offender treatment and risk assessment testing, including "clinical polygraph testing and other specific sex offender tests, as directed by the probation officer"; prohibition of sexually explicit material or child pornography; submission to reasonable searches of person, property, vehicles, business, computers and residence; prohibition on contact with children under eighteen without prior written permission of the probation officer; and prohibition on contact with the victims. ROA, Vol. 1 at 4-5 (emphasis omitted). The government explained the purpose of the polygraph testing requirement as follows: "The polygraph testing is part of the defendant's sexual offender treatment and risk assessment. The USPO uses this information as one part of assessing the defendant's performance while on supervision, and is a central

3

aspect of the defendant's sex rehabilitation treatment." Id. at 6.

Begay agreed to all of the proposed additional conditions, except for the polygraph testing condition. He argued that the district court did not have the authority to impose the polygraph condition because there were no changed circumstances warranting modification, and the district court could not add a new condition simply because it thought that polygraph testing was a good idea. He also argued that polygraph testing was not a valid condition of supervised release because it is unreliable and could be used as a ruse to manipulate the supervisee. After a hearing, the district court granted the USPO's motion and imposed all of the requested additional special conditions of supervised release, including the polygraph testing condition.

## II

We review the district court's interpretation of a statute de novo, United States v. Romero, 122 F.3d 1334, 1337 (10th Cir. 1997), and the district court's decision to impose special conditions of supervised release for abuse of discretion, United States v. Smith, 606 F.3d 1270, 1282 (10th Cir. 2010).

## III

Begay argues that changed or unforeseen circumstances must exist before the district court has the authority to modify conditions of supervised release. Title 18 U.S.C. § 3583(e)(2) provides district courts authority to "modify, reduce, or enlarge the conditions of supervised release, at any time prior to the expiration

4

or termination of the term of supervised release . . . ." It is clear from the language of the statute that a district court has authority to modify conditions of supervised release after considering certain 18 U.S.C. § 3553(a) factors. Although Begay asks us to interpret the statute to limit the district court's authority to modify special conditions of supervised release to only those cases where the government can show a change in circumstances, we refuse to impose that limitation on the district court's authority.

"[A]fter considering the factors set forth in [18 U.S.C.] section 3553(a)(1), (a)(2)(B), (a)(2)(C), (a)(2)(D), (a)(4), (a)(5), (a)(6), and (a)(7),"[1] a district court may:

> (1) terminate a term of supervised release and discharge the defendant released at any time after the expiration of one year of supervised release, pursuant to the provisions of the Federal Rules of Criminal Procedure relating to the modification of probation, if it is satisfied that such action is warranted by the conduct of the defendant released and the interest of justice;

> (2) extend a term of supervised release if less than the maximum authorized term was previously imposed, and may modify, reduce, or enlarge the conditions of supervised release, at any time prior to the expiration or termination of the term of supervised release, pursuant to the provisions of the Federal Rules of Criminal Procedure relating

---

[1] These enumerated sections are the non-punitive 18 U.S.C. § 3553(a) factors: the nature and circumstances of the offense and the history and characteristics of the defendant; the need to afford adequate deterrence to criminal conduct; the need to protect the public from further crimes of the defendant; the need to provide the defendant with needed training and/or care; the kinds of sentences available and the sentencing range; pertinent policy statements; the need to avoid unwarranted sentencing disparities; and the need to provide restitution.

5

to the modification of probation and the provisions applicable to the initial setting of the terms and conditions of post-release supervision;

(3) revoke a term of supervised release, and require the defendant to serve in prison all or part of the term of supervised release authorized by statute for the offense that resulted in such term of supervised release without credit for time previously served on postrelease supervision, if the court, pursuant to the Federal Rules of Criminal Procedure applicable to revocation of probation or supervised release, finds by a preponderance of the evidence that the defendant violated a condition of supervised release;

. . . .

18 U.S.C. § 3583(e). The Rule of Criminal Procedure relating to the modification of conditions of probation or supervised release, Fed. R. Crim. P. 32.1(c), requires the district court to hold a pre-modification hearing unless such a hearing is waived or the modifications are unopposed and are favorable to the defendant.[2]

By its terms, subsection (e)(2) of 18 U.S.C. § 3583 does not require a district court to make particular findings—such as a finding of changed

---

[2] The advisory committee notes to Rule 32.1 discuss the reasons a probationer should have the right to apply to the sentencing court for a clarification or change of conditions, and state that "[p]robation conditions should be subject to modification, for the sentencing court must be able to respond to changes in the probationer's circumstances as well as new ideas and methods of rehabilitation." Fed. R. Crim. P. 32.1 advisory committee's note. The committee's view that courts must be able to modify conditions in order to respond to changed circumstances does not mean that changed circumstances are necessary for modification. Further, Rule 32.1 is not the source of a district court's authority to modify the conditions of supervised release; it sets forth only procedural requirements (notice and an opportunity to be heard). Therefore, the advisory committee notes do not limit the substantive circumstances under which a district court may modify conditions of supervised release.

circumstances—prior to modifying the terms of supervised release. In contrast, subsections (e)(1) and (e)(3) do require more specific determinations. Pursuant to subsection (e)(1), a district court may terminate a term of supervised release only "if it is satisfied that such action is warranted by the conduct of the defendant released and the interest of justice . . . ." 18 U.S.C. § 3583(e)(1). Pursuant to subsection (e)(3), a district court may revoke a term of supervised release only "if the court . . . finds by a preponderance of the evidence that the defendant violated a condition of supervised release . . . ." 18 U.S.C. § 3583(e)(3).

When compared to subsections (e)(1) and (e)(3), there is no clause in subsection (e)(2) which requires the district court to make additional findings before it can modify conditions of supervised release. Although Congress required certain findings prior to termination or revocation of supervised release, it did not require such findings prior to modification. The only statutory requirements for modification are that the district court consider the listed § 3553(a) factors, follow the procedure outlined in Fed. R. Crim. P. 32.1, and ensure that the modified conditions are consistent with the requirements applicable to all conditions of supervised release.

Relying on the language of 18 U.S.C. § 3583(e)(2), the Eighth Circuit has held that a district court is not required to find changed circumstances in order to modify conditions of supervised release. In United States v. Davies, 380 F.3d 329 (8th Cir. 2004), the government sought the district court's approval of its

proposed addition of an alcohol and drug abuse treatment condition two months

after Davies's supervised release began. The district court imposed the new

condition based only on information in the presentence report, and not on any

new information obtained after the original sentencing. Id. at 331-32. The Eighth

Circuit held that:

> A district court may modify the conditions imposed on a term of
> supervised release even when, as in the present case, the
> modification is based only on evidence that was available at the
> original sentencing. This is because the statute that authorizes district
> courts to modify the conditions of supervised release does not require
> new evidence, nor even changed circumstances in the defendant's
> life.

Id. at 332. The Davies court continued, "although it is inefficient to omit

important conditions and later, upon further reflection, petition the court to

incorporate such conditions, the relevant statutes and rules do not prohibit such

practice." Id.

We agree with the Davies court, and hold that 18 U.S.C. § 3583(e)(2) does

not require a district court to find changed circumstances in order to modify

conditions of supervised release.[3] The Second Circuit's statement in United

States v. Lussier, 104 F.3d 32, 36 (2d Cir. 1997), that "[s]ection 3583(e) provides

---

[3] Begay argues that the Supreme Court's recent decision in Holland v.
Florida, 130 S. Ct. 2549 (2010), supports his argument that we should read a
changed circumstances requirement into the statute. In Holland, the Supreme
Court held that the statute of limitations on habeas petitions in 28 U.S.C. §
2244(d) is subject to equitable tolling. Permitting traditional equitable tolling of
a statute of limitations is very different from reading an additional substantive
requirement into a statute. Begay's reliance on Holland is not persuasive.

8

the district court with retained authority to revoke, discharge, or modify terms and conditions of supervised release following its initial imposition of a supervised release term in order to account for new or unforeseen circumstances" does not convince us otherwise. The <u>Lussier</u> court held that a district court does not have the authority to modify conditions of supervised release based on an argument that a particular condition is unlawful, because lawfulness is not one of the § 3553(a) factors listed in 18 U.S.C. § 3583(e). <u>Id.</u> at 34. The <u>Lussier</u> court held that any challenge to the legality of a condition of supervised release must be raised on direct appeal or in a habeas petition. It did not consider whether a district court has the power to modify conditions absent changed circumstances. Likewise, we are not persuaded by Begay's citation of cases in which district courts have refused to modify conditions because the defendant had not shown changed circumstances warranting modification. <u>See</u> <u>United States v. Collotta</u>, 562 F. Supp. 2d 584 (S.D.N.Y. 2008); <u>United States v. Weintraub</u>, 371 F. Supp. 2d 164 (D. Conn. 2005). Although these cases illustrate that a district court retains the discretion to determine whether there are valid reasons to modify, they do not impose a limitation on the district court's <u>power</u> to modify.[4]

Begay argues that a changed circumstances requirement is necessary because otherwise a district court would be able to "review repeatedly its original

_____

[4] Begay's citation to <u>Commonwealth v. Goodwin</u>, 933 N.E.2d 925 (Mass. 2010), is unpersuasive because that decision concerned a court's power to modify conditions of probation under Massachusetts common law.

9

assessment of the same § 3553(a) factors it considered at the original sentencing and come to different conclusions, resulting in multiple modifications of supervised release conditions." Aplt. Reply Br. at 2. However, § 3583(e)(2) permits modification only after the district court has considered certain § 3553(a) factors. This requirement prevents district courts from modifying conditions haphazardly or without justification. Cf. United States v. Pruden, 398 F.3d 241, 248 (5th Cir. 2005) ("The § 3553(a) factors are fairly broad, but they do impose a real restriction on the district court's freedom to impose conditions on supervised release.").

Begay argues that § 3583(e)(2) "must be read in light of . . . well-entrenched" interests in the finality of judgments. Aplt. Br. at 15. Begay's concerns regarding the finality of judgments are overstated in this context. Sentences of supervised release are subject to considerably more alteration than, for example, sentences of imprisonment. Compare 18 U.S.C. § 3583(e) with 18 U.S.C. § 3582(c) (setting forth the very narrow circumstances under which a court may modify a term of imprisonment) and Fed. R. Crim. P. 35. Finality—in the sense of predictability or lack of potential for change—may sometimes be at odds with the purposes of supervised release because a supervisee's rehabilitative needs are often fluid or evolving. As regards the imposition of conditions of supervised release, it is arguable that a district court is in a more informed position to evaluate a defendant's conditions of release immediately prior to a

10

defendant's release rather than at the time of sentencing—which in this case was fourteen years prior to the defendant's release.  A policy favoring finality does not require us to read a changed circumstances requirement into 18 U.S.C. § 3583(e)(2).  The district court did not have to find changed circumstances before adding the polygraph testing condition.

IV

Begay argues that, even if the district court had the authority to impose the polygraph testing condition, the condition is invalid because it is unreliable, is subject to manipulation, and involves a greater than necessary deprivation of his liberty.  Although we are somewhat skeptical of the usefulness of polygraph testing as a supervision tool, we cannot conclude on this record that the district court abused its discretion in imposing the condition.

 "A court enjoys broad discretion in setting a condition of supervised release . . . ." United States v. Edgin, 92 F.3d 1044, 1048 (10th Cir. 1996).  After considering the § 3553(a) factors enumerated in 18 U.S.C. § 3583(e) and holding a hearing, a district court may modify conditions of supervised release, provided the new conditions are consistent with the requirements for all conditions of supervised release.  18 U.S.C. § 3583(e)(2).  A district court may order any special condition it considers appropriate,

to the extent that such condition —

(1) is reasonably related to the factors set forth in section

11

3553(a)(1), (a)(2)(B), (a)(2)(C), and (a)(2)(D);[5]

> (2) involves no greater deprivation of liberty than is reasonably necessary for the purposes set forth in section 3553(a)(2)(B), (a)(2)(C), and (a)(2)(D); and
>
> (3) is consistent with any pertinent policy statements issued by the Sentencing Commission pursuant to 28 U.S.C. [§] 994(a) . . . .

18 U.S.C. § 3583(d).  A condition need not be reasonably related to all the listed § 3553(a) factors, as long as it is reasonably related to one or more of the factors.

United States v. Hahn, 551 F.3d 977, 983-84 (10th Cir. 2008).

In this case, the district court considered the relevant § 3553(a) factors and concluded that Begay's supervised release should be modified to include polygraph testing:

> Defendant pled guilty to the serious crime of aggravated sexual abuse.  While on pre-trial release,[6] Defendant assaulted members of his family, including the daughter he pled guilty to abusing, with a gun.  The nature and circumstances of the offense therefore counsel in favor of more extensive conditions of supervised release. . . . The polygraph testing element of these conditions is part of prescribed

---

[5]  Again, these factors are: the nature and circumstances of the offense and the history and characteristics of the defendant; the need to afford adequate deterrence to criminal conduct; the need to protect the public from further crimes of the defendant; and the need to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.  18 U.S.C. § 3553(a).

[6]  The district court's statement that Begay committed the assaults while on pretrial release was a result of the government's erroneous statement to that effect in its motion.  Begay assaulted his family after the abuse was reported, but before he was charged.  See Aple. Br. at 8 n.7.  Begay's counsel has repeated this error, stating in Begay's opening brief on appeal that Begay committed the assaults "while released."  Aplt. Br. at 5.

12

sex offender treatment and is, as counsel for the Government pointed out at the hearing, just one of many tools that treatment providers can use to assess and treat Defendant as part of his rehabilitation. As such, polygraph testing would serve the purpose of providing effective correctional and rehabilitative treatment. While the Court notes the significant reliability problems with polygraph testing, polygraph testing in this context would serve the purposes of sentencing.

ROA, Vol. 1 at 25-26. The court rejected Begay's argument that polygraph testing is too unreliable, stating that "[w]hereas the polygraph is undisputedly too unreliable to use in Court as evidence of guilt or innocence, the Government is not seeking to admit the results of any of Defendant's polygraph tests in court." Id. at 27.

Polygraph test results are often inadmissible in court,[7] and some scientists question polygraph testing's utility. See, e.g., United States v. Scheffer, 523 U.S. 303, 309-10 (1998) (discussing the scientific community's polarized views on polygraph testing). Nonetheless, the district court did not abuse its discretion when it imposed the condition. The district court heard evidence that polygraph testing could be an effective supervision and rehabilitation tool. The government explained that polygraph testing is a tool that the USPO uses to help ensure that a supervisee is abiding by the terms of his supervised release. A failed polygraph

---

[7] This court does not have a per se rule banning the introduction of polygraph test results. Admissibility under Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579 (1993), and Fed. R. Evid. 403 and 702 is assessed on a case-by-case basis. United States v. Call, 129 F.3d 1402, 1405 (10th Cir. 1997).

"could trigger a meeting with the defendant; going over the conditions; speaking with him about whether or not maybe he needs additional therapy . . . ." ROA, Vol. 3 at 16.[8] Begay argues that polygraph testing is useless in his case because he knows that a failed polygraph will not cause revocation of his supervised release. Aplt. Reply Br. at 11. However, polygraph test results could be useful for other reasons. Polygraph testing could still encourage Begay to be truthful with his probation officer, and it could alert the USPO to potential problems which would prompt further supervisory inquiry. See United States v. Johnson, 446 F.3d 272, 277 (2d Cir. 2006) ("[T]he incremental tendency of polygraph testing to promote . . . candor furthers the objectives of sentencing by allowing for more careful scrutiny of offenders on supervised release."); also cf. United States v. Metzener, 584 F.3d 928, 931 (10th Cir. 2009) (describing circumstances where the defendant was confronted with a deceptive polygraph response and, as a result, admitted to violating the conditions of his treatment). We also note that several other circuits have upheld the imposition of polygraph testing as a special condition of supervised release. E.g., Johnson, 446 F.3d at 277-78; United States

---

[8] The government argues as additional support for the inclusion of polygraph testing in Begay's special conditions of supervised release the fact that the United States District Court for the District of New Mexico adopted in 2007 standard sex offender conditions that include polygraph testing. See Aple. Br. at 28. While the government did argue before the district court that polygraph testing for sex offenders when on probation is "used widely across the nation, in addition to this district," ROA, Vol 3 at 16, the government did not specifically rely on the district-wide adoption of standard sex offender special conditions as support for the modification it proposed.

14

v. Dotson, 324 F.3d 256, 261 (4th Cir. 2003); United States v. Zinn, 321 F.3d 1084, 1090 (11th Cir. 2003); United States v. Lee, 315 F.3d 206, 217 (3d Cir. 2003).

Begay fails to support his assertion that polygraph testing involves a significant additional restriction on his liberty. We have held that special conditions constitute a greater than necessary deprivation of liberty when they infringe upon fundamental liberty interests, such as familial association. See, e.g., Smith, 606 F.3d at 1284. Although polygraph testing may be invasive and anxiety-provoking, it does not rise to this level. We have approved special conditions that involve a greater level of intrusion into a supervisee's life, such as a condition permitting suspicionless searches of the supervisee's person, property, and automobile. See United States v. Hanrahan, 508 F.3d 962, 971 (10th Cir. 2007). Regardless of whether the polygraph condition is in place, Begay will be required to undergo sex offender treatment and meet with his probation officer. See Lee, 315 F.3d at 217 ("Since appellant is already directed to report periodically to the probation officer and provide truthful answers . . . the additional requirement that Lee undergo polygraph testing does not place a significantly greater demand on him."). Begay has not explained how polygraph testing constitutes a significant further deprivation of his liberty. The district court did not abuse its discretion by imposing the condition.

AFFIRMED.